UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In Re:                                          Case No. 16-21497-PGH
                                                Chapter 11
CLUB VILLAGE, LLC,

                    Debtor.
_____/

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING
AND SCHEDULING THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS,
FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, SUBJECT TO
HIGHER AND BETTER OFFERS; (B) APPROVING THE BIDDING PROCEDURES;
(C) APPROVING THE FORM OF THE ASSET PURCHASE AGREEMENT; (D)
SCHEDULING AN AUCTION TO ACCEPT HIGHER AND BETTER BIDS; (E)
SCHEDULING A HEARING TO APPROVE SALE ARISING OUT OF AUCTION; (F)
APPROVING THE NOTICE OF SALE; AND (G) APPROVING PAYMENT OF
CLOSING COSTS AND BROKER'S FEES**

CLUB VILLAGE, LLC, the Debtor and Debtor-in-Possession (the "Debtor" or "Seller"),

by and through undersigned counsel, pursuant to sections 105, 363, and 1146 of the Bankruptcy

Code, Federal Rules of Bankruptcy Procedure 2002 (a)(2), 2002 (c)(1), and 6004, and Local Rules

2002-1(C)(2), and 6004-1, requests that this Court enter an order (a) approving the sale of

substantially all of the Debtor's assets free and clear of all liens and encumbrances, subject to

higher and better offers; (b) approving the bidding procedures; (c) approving the form of the Asset

Purchase Agreement (as defined herein); (d) scheduling an auction (the "Auction") to accept

higher and better bids; (e) scheduling a hearing to approve sale arising out of auction pursuant to

11 U.S.C. § 363 (the "Sale Approval Hearing"); (f) approving the Notice of Sale (as defined

herein); and (g) approving payment of closing costs and broker's fees (the "Motion"), and in

support thereof, state as follows:

- 1 -

JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

2.      This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (N).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

4.      The statutory predicates for the relief sought herein are sections 363 and 105 of Title 11 of the U.S. Code (the "Bankruptcy Code").

SUMMARY

5.      The Debtor respectfully requests approval of the sale process (the "Sale") through which the Debtor may expose its Assets (as defined herein) to competitive bids, establish bidding procedures, and set various deadlines in order to accomplish the sale. The Assets are listed and described as follows:

A.  The real property, which is an 84-unit apartment complex located at 1601 NW 13th St., Boca Raton, Florida, 33486 (the "Property"); and

B.  All personal property of the Debtor ("Personal Property") (list attached as Exhibit "A"), except those assets listed in Exhibit "B" ("Excluded Assets"); (collectively, the "Assets").

6.      As set forth in this Motion, the Debtor seeks the following proposed deadlines in order to effectuate the proposed sale:

(a)      Deadline to Submit Qualifying Bid Packet: **November 28, 2016**

(b)      Deadline to Tender Deposit[1]: **November 28, 2016**

(c)      Deadline to Approve Qualified Bidders: **November 29, 2016**

---

[1] Refundable except as to the Successful Bidder and Backup Bidder (each as defined herein), as provided in the APA.

      (d)      Date for Auction and Hearing to Approve Sale[2]: **December 1, 2016**

      (e)      Last date for Closing of Sale: **December 23, 2016**

BACKGROUND

7.     The Debtor owns and operates the Property, an 84-unit apartment complex located at 1601 NW 13th Street, Boca Raton, Florida, 33486, and the legal description is attached as Exhibit "C" to this Motion.

8.     The Debtor proposes to sell the Assets to the highest and best bidder in a Court-conducted auction.

9.     The Debtor intends to sell substantially all of its Assets pursuant to a contract substantially in the form attached as the Asset Purchase Agreement (the "APA"), to be entered into among the Debtor and the ultimate buyer (the "Purchaser" or the "Buyer"). A copy of the form APA is attached hereto as Exhibit "D".

10.    A summary of the key terms[3] of the APA are:

    (a)  **Transfer of Purchased Assets – Section 2.1.** Upon the terms and subject to the conditions and provisions contained in the order granting this Motion, in the APA, and in the Sale Approval Order, at the Closing, Seller shall sell, convey, transfer, assign and deliver to Buyer or cause to be sold, conveyed, transferred, assigned and delivered to Buyer, and Buyer, or its designated Affiliate, shall acquire and accept from Seller, the Purchased Assets, free and clear of all liens, claims, and encumbrances, except the Assumed Liabilities.

    (b)  **Excluded Assets; Excluded Liabilities – Section 2.2.** Notwithstanding any other terms, provisions and conditions of the APA, Buyer shall not (i) acquire any of the Excluded Assets or (ii) assume, or otherwise be responsible or liable for or obligated with respect to, any Liabilities or obligations of Seller to be set forth on Schedule 2.2(ii) attached to the APA (the "Excluded Liabilities"). In the event that a question arises with regard to any item of property, tangible or intangible, and whether such item is intended to be included as a Purchased Asset being transferred to Buyer pursuant to the APA, if any such item is not specifically listed as an item of property included within the Purchased Assets,

---

[2] Due diligence may be conducted up until the date of the Auction.
[3] All capitalized terms in this paragraph, if not defined herein, shall have the meanings ascribed to them in the APA.

it shall be presumed that such item is an Excluded Asset, and is not intended to be transferred under the APA.

(c) **Assumed Liabilities – Section 2.3.** From and after the Closing, Buyer shall assume and undertake to pay, perform, and discharge when due or required to be performed, the Assumed Liabilities.

(d) **Purchase Price – Section 2.4.** In accordance with the Sales Procedure Order, Buyer shall deposit Five Hundred Thousand U.S. Dollars ($500,000.00) in cleared funds, as a deposit (the "Deposit"), with Seller's bankruptcy counsel, Furr Cohen, P.A. If Buyer is the successful bidder at the Auction (the "Successful Bidder") and completes the sale through Closing, such Deposit will be credited against the Purchase Price at Closing. In the event Buyer is not the Successful Bidder or is not the Backup Bidder, such Deposit will be returned to Buyer no later than five (5) Business Days following entry of the final Sale Approval Order. In the event Buyer is the Successful Bidder (or is the Backup Bidder and the Successful Bidder fails to close) and the Agreement is subsequently terminated for any reason other than as set forth in Sections 11.1(a), or the Buyer otherwise fails to close through no fault of the Seller, then Seller may retain such Deposit; *provided, however*, that the retention of such Deposit shall not be in limitation of any other claims or rights to damages the Seller may have under or in connection with this Agreement.

## RELIEF SOUGHT AND BASIS FOR RELIEF

11.    The Debtor proposes a sale of the Assets through auction, subject to higher and better offers, and free and clear of all liens, claims, and encumbrances (the "Sale"), with any liens, claims, or encumbrances attaching to the proceeds of the Sale (the "Sale Proceeds"), except for the current year taxes, and subject to restrictions, easements, and limitations of record.

12.    This Court has statutory authority to authorize the sale of substantially all of the Debtor's Assets free and clear of liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code. A trustee or debtor in possession may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

- 4 -

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 365(f)(5); *In re Bryan*, 2013 WL4716194, *1 (Bankr. M.D. Ala. 2013) ("Pursuant to 11 U.S.C. § 363(f) the trustee may sell property of the estate 'free and clear of any interest in such property of an entity other than the estate,' provided any one of the five disjunctive conditions are satisfied…").

13.    Section 363(b)(1) of the Bankruptcy Code authorizes a trustee or debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate" after notice and a hearing. 11 U.S.C. §§ 363(b)(1), 704(a)(1). The standard applicable to a motion under Section 363(b)(1) of the Bankruptcy Code is whether the proposed sale serves a sound business purpose. *In re BDK Health Management*, 1998 WL 34188241, *5 (Bankr. M.D. Fla. 1998). Courts have held that this standard is satisfied where: (1) any improper or bad faith motive, (2) price is fair and the negotiations or bidding occurred at arm's length, (3) adequate procedure, including proper exposure to the market and accurate and reasonable notice to all parties in interest. *In re Gulf States Steel Inc. of Alabama*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002). In this instance each of the factors are met.

14.    Subject to the terms and conditions of the APA, the Debtor, in the sound exercise of its business judgment, has concluded that consummation of the Sale will best maximize the value of the Debtor's estate for the benefit of the Debtor's creditors.

15.    In order to ensure the highest possible recovery for the Debtor's estate, the Debtor proposes a competitive Auction of the Assets, as contemplated in the Bidding Procedures set forth

herein. A competitive 363 sale will generate substantially more value for the estate, as the alternative would be a state foreclosure sale. Such a sale will likely chill bidding, as the seller/owner has a statutory right of redemption. In addition, because of the pending appeal against the Lender by the Debtor (described below), bidding may be further hampered. Finally, a 363 sale guarantees "clean" title, which will undoubtedly produce a stronger buying pool. Accordingly, the Debtor respectfully asserts that ample business justification exists for the Sale.

16.    Pursuant to Section 363(f) of the Bankruptcy Code, the Debtor will sell the Assets free and clear of all liens, claims and encumbrances, except those excluded in the APA, if any. The Debtor proposes that any liens transfer and attach to the net sale proceeds with the same validity, priority, force and effect that such liens had on the Assets immediately prior to the Closing, with the exception of the escrow of the disputed claim amount with the Lender, described below. The Debtor believes that the following liens exist as to the Assets:

a.    A first mortgage held by CF SBC Pledgor 1 2012-1 Trust (the "Lender"). The Debtor does not dispute that $7,000,000.00 (the "Undisputed Amount") is owed to the Lender, and proposes to pay said sum out of the Sale proceeds at Closing. The Lender holds a judgment in the approximate amount of $10,966,640.65 (the "Judgment Amount") plus unliquidated fees and costs. The dispute over the validity of the difference between the Undisputed Amount and the Judgment Amount (the "Disputed Amount") is currently being litigated in the Fourth District Court of Appeals, Florida. Therefore, the Debtor proposes to place the Disputed Amount from the Sale Proceeds in escrow, pending the resolution and exhaustion of the Debtor's appellate rights.

17.    The Debtor requests that this Court find, at the subsequent Sale Hearing to be conducted immediately after the Auction, that the Purchaser is a good-faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code. The Debtor further requests that, after the Sale Hearing, this Court enter the Sale Approval Order authorizing and approving the APA executed by the Successful Bidder or the Backup Bidder, as applicable, and authorize the Debtor's execution of, entry into, and consummation of the Successful Bidder's or Backup Bidder's (as applicable) APA.

18.    The Debtor further requests that the Court enter a finding that the Purchaser, as defined herein, constitutes a good faith purchaser of the Assets pursuant to 11 U.S.C. § 363(m) such that the reversal or modification on appeal of the sale of the Assets to the Purchaser shall not affect the validity of the Sale to the Purchaser whether or not the Purchaser knew of the pendency of the appeal.

<u>AUCTION PROCESS AND BIDDING PROCEDURES</u>

19.    The Debtor propose to sell the Assets at the Auction, which will take place at the United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division, 1515 N. Flagler Drive, 8th Floor, Courtroom A, West Palm Beach, FL 32401 on **December 1, 2016 at 9:30 a.m.** All bidders must appear in person or have a representative with full and binding bidding authority to appear in person.

The Debtor proposes the following bidding procedures (collectively, the "<u>Bidding Procedures</u>"):

i. <u>Qualified Bid:</u> A qualified bid shall be a bid submitted no later than 5:00 p.m. (Prevailing Eastern Time), **November 28, 2016** (the "<u>Bid Deadline</u>") to: Aaron A. Wernick, Esq., Furr Cohen, P.A., 2255 Glades Road, Suite 337W, Boca Raton, Florida 33431, Telephone (561)

395-0500, awernick@furrcohen.com ("Debtor's counsel"), accompanied by a deposit in the amount of $500,000.00 and an executed asset purchase agreement in substantially the same form as the APA, together with a redlined copy of such definitive purchase documents marked against the APA ("Qualified Bid"). (Any party submitting a Qualified Bid and meeting the other requirements set forth herein shall be a "Qualified Bidder"). No Qualified Bid shall be contingent upon financing or due diligence necessary to its consummation and each Qualified Bid must be payable in or by cash, cashier's check, certified check or wire transfer ("Cash"). The bidder's Qualified Bid must include the bidder's address, telephone number, and email address where the bidder may be contacted.

ii. Minimum Bid. The minimum bid at the Auction will be $9,500,000.00 plus the Buyer's Premium (defined herein).

iii. Deposit: The deposit ("Deposit") shall be in Cash in the amount of no less than Five Hundred Thousand Dollars ($500,000.00), which must be received by Debtor's counsel by the Bid Deadline. Deposits will be held in Furr Cohen's non-interest bearing trust account and will be returned to such bidder (if such bidder is not the Successful Bidder or Backup Bidder) within five business days following the entry of the final Sale Approval Order. Any Qualified Bidder shall also provide to the Debtor full disclosure of each entity that will be participating in such bid in order to satisfy the requirements enumerated in sections 363(m), 363(n), 365(b), and 365(f)(2) of the Bankruptcy Code.

iv. "As is, Where is": The Assets shall be transferred on an "as is" and "where is" basis.

v. Bidding Increments: The Auction shall be conducted by the Court and shall be a forum in which the Qualified Bidders may make competing bids to purchase the Assets in minimum bid increments. The bidding at the Auction shall start in the amount of $9,500,000.00.

Qualified Bidders shall be permitted to submit and raise their bids until all Qualified Bidders cease bidding and raising their bids. Each competing bid must be in increments of at least $50,000.00 greater than the immediately preceding competing bid and each competing bid must be payable in Cash. The Debtor can consider each Bid separately and together and shall recommend to the Court which Bids should be approved.

vi. <u>Modifications</u>: All bids subsequent to the Initial Overbid Amount, whether oral or written, shall be deemed to constitute valid modifications or amendments to the signed APA previously provided by such bidder.

vii. <u>Successful Bidder</u>: At the conclusion of all bidding, the Court shall select the party who has submitted the highest or otherwise best offer to purchase the Assets  (the "<u>Successful Bidder</u>") and the party who has submitted the second highest or otherwise best offer to purchase the Assets (or any portion thereof) (the "<u>Backup Bidder</u>").

viii. <u>Bid Expiration Date</u>:  All bids shall remain open and irrevocable until five business days following the entry of the Sale Approval Order.

ix. <u>Bankruptcy Court Approval and Sale Approval Hearing</u>: **ANY SALE SHALL BE SUBJECT TO APPROVAL OF THE BANKRUPTCY COURT**. Upon conclusion of the Auction, the Court will conduct the Sale Approval Hearing, authorizing the contemplated sale, authorizing and approving the transactions contemplated by the APA executed between the Debtor and the Successful Bidder or Backup Bidder, as applicable, and subsequently entering an order approving said sale (the "<u>Sale Approval Order</u>").

x. <u>Default</u>: In the event the Successful Bidder fails to close the Sale, the Successful Bidder will forfeit its Deposit and the Assets shall be sold to the Backup Bidder that submitted the next highest and best bid, without any representations or warranties. In the event that the

Successful Bidder fails to close, and subsequently the Backup Bidder fails to close the Sale through no fault of the Debtor, the Backup Bidder will also forfeit its Deposit. In the event that the Successful Bidder closes the Sale, the Debtor shall return, by check, the Backup Bidder's Deposit within five business days from the Closing.

xi. <u>Free and Clear</u>: The sale shall be free and clear of all liens, claims and encumbrances, and any valid liens shall attach to the net sale proceeds, pursuant to Section 363(f), with the exception of the disputed amount to be placed in escrow, as described in ¶ 16.a., *supra*.

xii. <u>Buyer's Premium</u>. The Purchaser must also pay a 3% Buyer's Premium, as described in ¶ 23, *infra*.

xiii. <u>Closing</u>: Except as otherwise agreed to by the Debtor, the closing of the sale of the Assets (the "<u>Closing</u>") shall take place at a location designated by the Debtor, no later than December 23, 2016.

20.     The Debtor submits that the Bidding Procedures described above are fair, reasonable and calculated to maximize the value of the Assets and create a competitive sale environment.

21.     The Debtor shall file and serve upon all interested parties entitled to receive notice, including the Qualified Bidders, fully executed copies of the Qualified Bids to be considered at the Auction no later than 5:00 p.m. (Prevailing Eastern Time) one day prior to the Auction. This requirement is waived in the event that there are no Qualified Bids. The Debtor shall notify all Qualified Bidders, no later than 5:00 p.m. (Prevailing Eastern Time) three days before the Auction that they may participate in the Auction.

22.     All Qualified Bidders, the Successful Bidder, and the Backup Bidder shall be deemed to have consented to the core jurisdiction of this Court and to have waived any right to a

jury trial in connection with any disputes relating to the Auction or the Sale. All purchase agreements shall be governed by and construed in accordance with the laws of the State of Florida. All Qualified Bidders, the Successful Bidder, and the Backup Bidder shall be bound by their respective bids until the closing of the sale contemplated by the APA or the termination thereof as to such party.

<u>REQUEST FOR AUTHORIZATION TO PAY BROKER'S COMMISSION AND MARKETING COSTS</u>

23.     The Debtor's managing member and sole owner, Fred DeFalco, is a licensed real estate broker and auctioneer. Mr. DeFalco will be performing the customary services of a listing broker, including marketing the Sale, showing the Property, providing information to prospective buyers, and handling buyer inquiries; however, Mr. DeFalco will not be charging or otherwise seeking compensation from the Estate for his services.

24.     The Debtor proposes a payment of a buyer's premium (the "<u>Buyer's Premium</u>") of 3% of the total sales price, to be distributed as follows:

      a.   2% of the sale price to go to the Purchaser's broker (the "<u>Commission</u>"); and

      b.   1% to reimburse the estate for funds used for marketing and advertising in order to promote the sale (the "<u>Marketing Costs</u>")[4].

25.     The Debtor requests that this Court authorize payment of the Commission to the Purchaser's broker as well as reimbursement to the estate for any Marketing Costs.

<u>REQUEST FOR WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P. 6004(H)</u>

26.     In addition, given the Debtor's and the Bidders' interest in proceeding expeditiously, the Debtor request that the Court waive the fourteen-day stay of the effectiveness

---

[4] The Debtor submits that an estimated $35,000 will be needed for costs to market and advertise, and proposes to utilize the funds in the operating account of the Debtor for said costs.

of the Approval Order consistent with Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, and the  Buyer may elect to close the sale prior to the Approval Order becoming final and non-appealable.

<u>NOTICE</u>

27.     The Debtor shall provide, by e-mail, facsimile and/or First Class U.S. Mail, written notice (the "<u>Notice of Sale</u>") of the Auction, the bidding procedures and the Sale Hearing within three business days from the entry of the order granting this Motion to: (a) the United States Trustee; (b) the Internal Revenue Service; (c) all other parties who have filed a Notice of Appearance; and (d) all other creditors. The Notice shall be substantially in the form attached hereto as Exhibit "E".

28.     The Debtor submits that the Notice constitutes good and sufficient notice of the Auction and related matters and that no further notice need be given.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order (a) approving the sale of the Assets free and clear of all liens, claims and encumbrances, except as noted herein; (b) approving the Bidding Procedures; (c) approving the form of the Asset Purchase Agreement; (d) scheduling the Auction; (e) scheduling a hearing to approve the Sale arising out of the Auction; (f) approving the Notice of Sale (g) approving payment of closing costs, broker's fees, and marketing costs; and (h) for such other and further relief as the Court deems just and proper.

<u>PROOF OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing were served on the Court CM/ECF notifications this 16th day of September, 2016 and will be served upon all creditors and interested parties on the official court matrix, upon receipt of the notice of hearing.

RESPECTFULLY SUBMITTED,

Furr Cohen, P.A.
*Attorneys for the Debtor*
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
Tel:(561)395-0500; Fax:(561)338-7532
By: /s/ *Aaron A. Wernick*
Aaron A. Wernick, Esq.
Florida Bar No: 14059
awernick@furrcohen.com

<u>Exhibit A</u>

<u>Personal Property</u>

1. Cash in the Seller's operating account as of the Closing Date.
2. Accounts receivable as of the Closing Date.
3. Security deposits of tenants.
4. Security deposit at Florida Power & Light. Approximate amount of $1,850.00.
5. Security deposit at City of Boca Raton. Approximate amount of $6,300.00.
6. Tenants list and rent roll.
7. Office furniture, fixtures, and equipment:
    a. Security camera system with monitor, and 6 cameras.
    b. Pool furniture: 16 chairs, 4 tables, 6 resin chaises.
    c. Lawn equipment in trailer: lawn mower, weed-eater, edger, chainsaw, pole saw, office golf cart, maintenance golf cart, 5,250 watt electric generator, 15,000 watt electric generator.
    d. 2 desks, 2 file cabinets, 3 office chairs, 2 bookshelves.
    e. 3 desk-top computers with 4 monitors.
    f. AT&T phone system with answering machine and 2 handsets.
8. Misc. Supplies [List attached to the following Exhibit D, Form Asset Purchase Agreement.]

<u>Exhibit B</u>

Excluded Assets


1.      Potential counter-claims against CW Capital, CF SBC Pledgor 1 2012-1 Trust, Fortress, and/or JPMorgan Chase.

2.      Appeal of Club Village LLC: *Club Village, LLC vs. CF SBC Pledgor Trust*, 4th District Court of Appeal, Case #4D16-2463

3.      Any pending or otherwise causes of action owned by Club Village LLC in the case of *CF SBC Pledgor vs. Club Village, LLC*, Case #502012CA012536XXXXMB

Exhibit C
Legal Description

LOTS 5, 6, 7, 8, 9, 10, 11, 12, 13 AND 14, BLOCK 27, "COUNTRY CLUB VILLAGE, SECTION E," ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 28, PAGE 204; EXCEPTING THEREFROM THAT PORTION: OF SAID LOTS DESCRIBED IN ORDER OF TAKING RECORDED IN OFFICIAL RECORDS BOOK 1845, PAGE 210, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA;

TOGETHER WITH:

A PORTION OF COUNTRY CLUB VILLAGE SECTION E, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 28, PAGE 204, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, DESCRIBED AS FOLLOWS:

BEGINNING AT A SOUTHEAST CORNER OF LOT 5, BLOCK 27 OF SAID PLAT; THENCE NO1° 25'25"W, ALONG THE EASTERLY LINE OF LOT 5, A DISTANCE OF 113.14 FEET TO. A POINT OF INTERSECTION WITH A NON-TANGENT CURVE, (A RADIAL LINE TO SAID POINT BEARS S37°15'3l'W); THENCE NORTHERLY AND SOUTHERLY ALONG THE ARC OF SAID CURVE BEING CONCAVE TO THE SOUTH HAVING A RADIUS OF 40.00 FEET, A CENTRAL ANGLE OF 282°38'08", AND AN ARC DISTANCE OF 197.32 FEET; THENCE SO1° 25'25"E, ALONG THE WESTERLY LINE OF LOT 8, A DISTANCE OF 89.99 FEET TO THE POINT OF CURVATURE OF A TANGENT CURVE; THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE BEING CONCA VE TO THE NORTHEAST, HAVING A RADIUS OF 25.00 FEET, A CENTRAL ANGLE OF 88°34'35", AND AN ARC DISTANCE OF 38.65 FEET; THENCE N90°00'00''W, 74.40 FEET TO THE POINT OF BEGINNING,

TOGETHER WITH:

A PORTION OF COUNTRY CLUB VILLAGE SECTION E, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 28, PAGE 204, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, DESCRIBED AS FOLLOWS:

COMMENCE AT THE SOUTHWEST CORNER OF LOT 9, BLOCK 27 OF SAID PLAT; THENCE S90°00'00"E, ALONG THE SOUTHERLY LINE OF LOT 9, A DISTANCE OF 142.42 FEET TO THE POINT OF BEGINNING, ALSO BEING THE POINT OF INTERSECTION OF A TANGENT CURVE; THENCE NORTHEASTERLY ALONG THE ARC OF SAID CURVE BEING CONCAVE TO THE NORTHWEST, HAVING A RADIUS OF 25.00 FEET, A CENTRAL ANGLE OF 90°00'00", AND AN ARC DISTANCE OF 39,27 FEET; THENCE N00°00'00"E ALONG THE EAST LINE OF LOT 9, 88.72 FEET TO THE POINT OF INTERSECTION WITH A NON-TANGENT CURVE, (A RADIAL LINE TO SAID POINT BEARS S38°40'56"W); THENCE NORTHERLY AND SOUTHERLY ALONG THE ARC OF SAID CURVE BEING CONCAVE TO THE SOUTH, HAVING A RADIUS OF 40.00 FEET, A CENTRAL ANGLE OF 282°38'08", AND AN ARC DISTANCE OF 197.32 FEET; THENCE S00°00'00'W. ALONG THE WEST LINE OF LOT 12, A DISTANCE OF 88.72 FEET TO THE POINT OF CURVATURE OF A TANGENT CURVE; THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE BEING CONCAVE TO THE NORTHEAST, HAVING A RADIUS OF 25.00 FEET, A CENTRAL ANGLE OF 90°00'00", AND AN ARC DISTANCE OF 39,27 FEET; THENCE S90°00'00"W, 100.00 FEET TO THE POINT OF BEGINNING.

**Property Address: 1551~1701 NW 13th  Street, Boca Raton, FL 33486**

<u>Exhibit C</u>

---

**ASSET PURCHASE AGREEMENT**

by and between

**CLUB VILLAGE, LLC**

as "Seller"

and

_____

as "Buyer"

Dated as of _____, 2016

---

## ASSET PURCHASE AGREEMENT

This **ASSET PURCHASE AGREEMENT** (this "Agreement"), dated as of this _____ day of _____, 2016, is by and between _____ a _____ _____, and/or their permitted assigns hereunder, (collectively, the "Buyer"), and **CLUB VILLAGE, LLC**, a Florida limited liability company (the "Seller").

### W I T N E S S E T H:

**WHEREAS**, Seller has filed a voluntary petition for relief under Case No. 16-21497-PGH (the "Bankruptcy Case"), under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "Court");

**WHEREAS**, Seller desires to sell, transfer, convey and assign to Buyer, and Buyer desires to purchase and acquire from Seller the Purchased Assets (as defined herein), free and clear of all liens, claims and encumbrances, as more specifically set forth herein; and

**WHEREAS**, the parties hereto contemplate that such assets will be sold, transferred, conveyed and assigned to Buyer and/or its designee pursuant to Sections 363 and 1146 of the Bankruptcy Code, and in accordance with an order to be entered by the Court and this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual covenants and promises contained herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

### ARTICLE 1
### DEFINITIONS

**1.1    Defined Terms**. As used herein, the terms below shall have the following meanings:

"Affiliate" shall mean with respect to any Person, any other Person which directly or indirectly Controls, or is under common Control with, or is Controlled by, such Person and, if such Person is an individual, any member of the immediate family (including parents, parents-in-law, spouse and children) of such individual and any trust or estate for which such individual or one or more members of such immediate family serves as a trustee or in a similar capacity or in which such individual or one or more members of such immediate family has a substantial beneficial interest, and any Person who is Controlled by such member or trust.

"Agreement" has the meaning set forth above in the preamble to this Agreement.

"Assumed Liabilities" shall mean those Liabilities related to or arising from the Purchased Assets.

"Auction" shall mean the auction conducted by the Court, per the Sale Procedures Order, of the Seller's assets.

"Backup Bidder" shall mean the party designated by the Court that has submitted the second highest or otherwise best offer at the Auction.

"Bankruptcy Case" has the meaning set forth in the Recitals.

"Books and Records" shall mean all business records, books, files, ledgers, billing records for assigned accounts receivable, documents and correspondence owned and controlled by the Seller, confidential and otherwise, in whatever form, wherever located, which relate to the Purchased Assets. Notwithstanding the foregoing, Purchased Assets shall not include those Books and Records relating to the formation, governance, legal existence, and operations of Seller, or Seller's accounting records relating to the operations of the Seller.

"Business Day" shall mean any day excluding Saturday, Sunday and any day which is a legal holiday under the laws of the State of Florida or is a day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

"Buyer" has the meaning set forth in the preamble to this Agreement.

"Contracts" shall mean all oral or written contracts, agreements, licenses, and sales and purchase agreements applicable to the Purchased Assets and/or the business operations of the Seller.

"Control" and "Controlled" shall mean the possession directly or indirectly, of power to direct or cause the direction of management or policies (whether through ownership of securities or partnership or other ownership interests, by contract or otherwise), provided that, in any event, any Person which owns, directly or indirectly, fifty-one percent (51%) or more of the securities having ordinary voting power or the election of directors of other governing body of a corporation or fifty-one percent (51%) or more of the partnership, membership or other ownership interest of any other Person (other than a limited partner of such Person) will be deemed to control such corporation or person.

"Court" has the meaning set forth in the Recitals.

"Closing" shall have the meaning set forth in Section 3.1.

"Closing Date" shall have the meaning set forth in Section 3.1.

"Excluded Assets" shall mean the assets of the Seller not included in the Purchased Assets, as set forth on Schedule 2.2."Final Order" shall mean an Order of the Court that has not been reversed, stayed, modified or amended and as to which the time to appeal or petition for certiorari has expired and as to which no appeal or petition for certiorari is pending.

"Liability" shall mean any liens, claims, encumbrances, and other liabilities (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due), including any liability for Taxes.

2

"Person" shall mean any individual, corporation, partnership, limited liability company, trust, association, joint venture or other entity or any kind whatsoever.

"Personnel" shall mean all directors, officers and employees.

"Purchase Price" has the meaning set forth in the <u>Section 2.4</u>.

"Purchased Assets" shall mean the assets of the Seller sold to Buyer, if Buyer is the Successful Bidder and completes the sale through Closing, to be set forth on <u>Schedule 2.1</u>, but shall in no event include any Excluded Assets.

"Representative" shall mean any attorney, accountant, agent, consultant or other representative.

"Sale Approval Order" has the meaning set forth in <u>Section 4.2</u>.

"Sale Approval Hearing" has the meaning set forth in <u>Section 4.2</u>.

"Sale Motion" has the meaning set forth in <u>Section 4.1</u>.

"Sale Procedures Order" shall mean the order of the Court granting the Sale Motion.

"Seller" has the meaning set forth in the preamble to this Agreement.

"Successful Bidder" has the meaning set forth in <u>Section 2.5</u>.

"Tax(es)" shall mean any federal, state, local or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, franchise, profits, withholding, social security (or similar), unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated or other tax of any kind whatsoever, including any interest, penalty or addition thereto, whether disputed or not.

       1.2    **Construction**. The headings and captions of the various Articles and Sections of this Agreement have been inserted solely for purposes of convenience, are not part of this Agreement, and shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Agreement. Unless stated to the contrary, all references to Articles, Sections paragraphs or clauses herein shall be to the specified Article, Section, paragraph or clause of this Agreement, and all references to Exhibits and Schedules shall be to the specified Exhibits and Schedules attached hereto. All Exhibits and Schedules attached are made a part hereof. All terms defined herein shall have the same meaning in the Exhibits and Schedules, except as otherwise provided therein. All references in this Agreement to "this Agreement" shall be deemed to include the Exhibits and Schedules attached hereto. The terms "hereby", "hereto", "hereunder" and any similar terms as used in this Agreement, refer to this Agreement in its entirety and not only to the particular portion of this Agreement where the term is used. Whenever in this Agreement provision is made for the payment of attorneys' fees, such provision shall be deemed to mean reasonable attorneys' fees and paralegals' fees. The term "including" when used herein shall mean "including, without limitation." Wherever in this Agreement the singular number is used, the same shall

include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require.

## ARTICLE 2
## PURCHASE AND SALE AGREEMENT

**2.1     Transfer of Purchased Assets**. Upon the terms and subject to the conditions and provisions contained herein and in the Sale Procedures Order or the Sale Approval Order, at the Closing, Seller shall sell, convey, transfer, assign and deliver to Buyer or cause to be sold, conveyed, transferred, assigned and delivered to Buyer and Buyer shall acquire and accept from Seller, the Purchased Assets, free and clear of all liens, claims, and encumbrances, except the Assumed Liabilities.

**2.2     Excluded Assets**. Notwithstanding any other terms, provisions and conditions of this Agreement, Buyer shall not acquire any of the Excluded Assets. In the event that a question arises with regard to any item of property, tangible or intangible, and whether such item is intended to be included as a Purchased Asset being transferred to Buyer pursuant to this Agreement, if any such item is not specifically listed as an item of property included within the Purchased Assets, it shall be presumed that such item is an Excluded Asset, and is not intended to be transferred hereunder.

**2.3     Assumed Liabilities**. From and after the Closing, Buyer shall assume and undertake to pay, perform, and discharge when due or required to be performed, the Assumed Liabilities.

**2.4     Purchase Price**. Upon the terms and subject to the conditions set forth herein, and provided Buyer is the Successful Bidder for the Purchased Assets at the Auction and completes the sale through Closing, Buyer shall pay to Seller for the sale, transfer, assignment, conveyance and delivery of the Purchased Assets, by delivery of cash payable by wire transfer of immediately available funds, less any Deposit, such successful bid for the Purchased Assets at Auction (the "Base Purchase Price"), plus a buyer's premium (the "Buyer's Premium") equal to three percent (3%) of the Base Purchase Price at Closing. (The Base Purchase Price plus the Buyer's Premium is referred to herein as the "Purchase Price".)

**2.5     Deposit**. In accordance with the Sales Procedure Order, Buyer shall deposit Five Hundred Thousand U.S. Dollars ($500,000.00) in cleared funds, as a deposit (the "Deposit"), with Seller's bankruptcy counsel, Furr Cohen, P.A. If Buyer is the successful bidder at the Auction (the "Successful Bidder") and completes the sale through Closing, such Deposit will be credited against the Purchase Price at Closing. In the event Buyer is not the Successful Bidder or is not the Backup Bidder, such Deposit will be returned to Buyer no later than five (5) Business Days following entry of the final Sale Approval Order. In the event Buyer is the Successful Bidder (or is the Backup Bidder and the Successful Bidder fails to close) and this Agreement is subsequently terminated for any reason other than as set forth in Sections 11.1(a), or the Buyer otherwise fails to close through no fault of the Seller, then Seller may retain such Deposit; *provided, however*, that the retention of such Deposit shall not be in limitation of any other claims or rights to damages the Seller may have under or in connection with this Agreement.

4

## ARTICLE 3
## CLOSING

**3.1     Closing**. Upon the terms and conditions set forth herein and in the Sale Procedures Order and the Sale Approval Order, the closing of the transactions contemplated herein (the "Closing") shall be held at 11:00 a.m. EST, at a location designated by Seller, on a date no later than December 23, 2016, or as otherwise ordered by the Court. The date on which the Closing occurs in accordance with the previous sentence is referred to as the "Closing Date."

**3.2     Deliverables at Closing**. At the Closing, and in connection with effecting and consummating the Closing, including, without limitation, the sale and purchase of the Purchased Assets and the delivery of the Purchase Price, Seller and Buyer shall, on the Closing Date, deliver the following:

(a)     Seller shall deliver to the Buyer the following (in the case of items (i) and (ii) below, copies thereof for Buyer's review prior to the Closing Date):

(i)     the various certificates, instruments and documents referred to in Section 8.1;

(ii)     as applicable, assignments, bills of sale, deeds, or such other instruments of sale, transfer, conveyance and assignment as necessary; and

(iii)     possession and control of the Purchased Assets.

(b)     Buyer shall deliver to Seller:

(i)     the Purchase Price; and

(ii)     the various certificates, instruments and documents referred to in Section 8.2.

(c)     After the Closing Date, Seller shall deliver to Buyer such other instruments as shall be reasonably requested by Buyer to vest in Buyer title in and to the Purchased Assets free and clear of any liens in accordance with the provisions hereof.

**3.3     Transaction Expenses**. Except as expressly provided herein, each party shall bear its own costs and expenses, including attorney, accountant and other consultant fees, in connection with the execution and negotiation of this Agreement and the consummation of the transactions contemplated hereby.

**3.4     Taxes**. All Taxes accrued as of the Closing Date that may give rise to a lien against the Purchased Assets shall be paid by the Seller at or prior to Closing. All Taxes arising from the sale or transfer of the Purchased Assets hereunder shall be paid by Seller.

**3.5     Other Closing Matters**. Each of the parties shall use their reasonable efforts to take such other actions required hereby to be performed by it prior to or on the Closing Date.

## ARTICLE 4
## COURT APPROVAL

**4.1     Auction Procedures**. This Agreement is made subject to (a) the Court granting the Seller's motion for approval of the contemplated sale, auction procedures, and the form of this Agreement (the "Sale Motion"); (b) overbid at the Auction; and (c) Court approval at the Sale Approval Hearing.

**4.2     Sale Approval.** Seller shall seek a Court order approving the sale of the Purchased Assets (as contemplated by this Agreement) (the "Sale Approval Order") at the hearing to approve sale (the "Sale Approval Hearing"), to be conducted immediately after the conclusion of the Auction, as outlined in the Sale Procedures Order.

**4.3     Disclosures**. Seller shall make adequate disclosures to the Court and its creditors and equity security holders of any contemplated transactions relating to the sale of the Purchased Assets involving insiders of Seller, regardless of whether such transactions are included in the sale of the Purchased Assets.

## ARTICLE 5
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this section are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the date of this Agreement throughout this Article 5).

**5.1     Authorization of Transaction**. Subject to the approval of the Court, this Agreement has been duly executed and delivered by Seller and is a valid and binding obligation of Seller, enforceable against it in accordance with its terms. Each agreement or instrument which has been or shall be entered into or executed and delivered by the Seller in connection with the transactions contemplated hereby has been (or will be), subject to the approval of the Court, duly authorized, executed and delivered by the Seller, and is (or will be when authorized, executed and delivered) subject to the approval of the Court, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms.

**5.2     AS IS SALE. EXCEPT AS SPECIFICALLY SET FORTH IN THIS ARTICLE 5, THE SELLER IS NOT AND WILL NOT BE MAKING ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AND SELLER FURTHER STATES THAT THE PURCHASED ASSETS, THE ASSUMED LIABILITIES AND THE BUSINESS BEING TRANSFERRED TO BUYER ARE AND WILL BE CONVEYED HEREUNDER "AS IS, WHERE IS" ON THE CLOSING DATE, AND IN THEIR THEN EXISTING CONDITION, WITHOUT ANY REPRESENTATION OR WARRANTY BY SELLER.**

**5.3     Brokers' Fees**. The Seller has no Liability nor obligation to pay any fees or commissions to any broker, finder or agent with respect to the transactions contemplated by this Agreement for which Buyer could become liable or obligated, except that 2% of the Purchase Price will be paid to the Purchaser's cooperating broker who has (a) properly registered their buyer and

(b) been acknowledged by the Seller in writing as a true cooperating broker.

**5.4** **Litigation**. Except for the Bankruptcy Case and as set forth on <u>Schedule 2.3</u> attached hereto, Seller (i) has no knowledge of any outstanding injunction, judgment, order, decree, ruling or charge against it, or (ii) is not a party nor threatened to be made a party to any action, suit, proceeding, hearing or investigation of, in, or before any court or quasi-judicial or administrative agency of any federal, state, local or foreign jurisdiction or before any arbitrator in any matter relating to the Purchased Assets.

**5.5** **Seller's Disclaimer Regarding Licenses and Permits**. Buyer shall have the right to initiate application for licenses and permits, including in any such name(s) for which the right to use such name(s) is acquired and transferred to Buyer hereunder, without objection from Seller, and the Seller shall cooperate with the Buyer post-Closing in confirming the release of all rights of the Seller in such names and their transfer to the Buyer. Notwithstanding the above, to the extent that such fictitious name or trade name is or has been referenced on or used with regard to any license or permit issued to Seller or to its owners, Seller (and its owners, as applicable) are not hereby transferring or assigning any such actual licenses or permits to the Buyer, nor is Seller or its owners representing that such items are transferrable, as such items may generally not be transferrable or may only be transferred with the consent and approval of a third party, which consent is beyond the control of Seller and/or its owners.

**ARTICLE 6**
**REPRESENTATIONS AND WARRANTIES OF BUYER**

As an inducement to Seller to enter into this Agreement, Buyer hereby makes the following representations and warranties as of the date hereof to Seller:

**6.1** **Organization of Buyer**. Each Buyer is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization or incorporation.

**6.2** **Authorization**. Buyer has all necessary corporate power and authority to enter into this Agreement and has taken all corporate action necessary, to execute and deliver this Agreement, to consummate the transactions contemplated hereby and to perform its obligations hereunder, and no other corporate proceedings on the part of Buyer are necessary to authorize the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby. This Agreement has been duly executed and delivered by Buyer and is a valid and binding obligation of Buyer, enforceable against it in accordance with its terms (except to the extent that enforcement may be affected by applicable bankruptcy, reorganization, insolvency and similar laws affecting creditors' rights and remedies and by general principles of equity (regardless of whether enforcement is sought at law or in equity)). Each agreement or instrument which has been or shall be entered into or executed and delivered by Buyer in connection with the transactions contemplated hereby has been (or will be) duly authorized, executed and delivered by Buyer, and is (or will be when authorized, executed and delivered) a valid and binding obligation of Buyer, enforceable against it in accordance with its terms (except to the extent that enforcement may be affected by laws relating to bankruptcy, reorganization, insolvency and similar laws affecting creditors' rights and remedies and by general principles of equity (regardless of whether enforcement is sought at law or in equity)).

7

**6.3** **Governmental Consents and Approvals**. Other than the Sale Approval Order, Buyer shall be solely responsible for determining and securing any and all consents, licenses, and permits of any kind legally required or desirable in Buyer's judgment for the use and operation of the Purchased Assets by the Buyer or its Affiliates or assigns on or after Closing, including, but not limited to, city or county business licenses, professional license(s), certification(s), accreditation(s), registration(s), credentials, and contracts. Other than the Sale Approval Order, no consent, waiver, agreement, approval or authorization of, or declaration, filing, notice or registration to or with, any federal, state, or local governmental or regulatory authority is required to be made or obtained by or for the benefit of Buyer in connection with the execution, delivery and performance of this Agreement, or as a condition of the Buyer consummating the transactions contemplated hereby.

**6.4** **No Violation**. The execution and delivery of this Agreement and the other agreements specified herein and the consummation of the transactions contemplated hereby and thereby do not and will not (i) violate any provision of the Articles of Incorporation, Bylaws or any other applicable organizational documents of Buyer or (ii) conflict with or violate any statute or law, or any judgment, decree, order, regulation or rule of any court or governmental authority, binding upon or applicable to Buyer or by which the property or assets of Buyer, including the Purchased Assets, are bound or affected.

**6.5** <u>**BUYER'S DUE DILIGENCE**</u>**. BUYER ACKNOWLEDGES AND UNDERSTANDS THAT, IN ENTERING INTO THIS AGREEMENT, BUYER IS RELYING UPON BUYER'S OWN DUE DILIGENCE INVESTIGATION AND EXAMINATION OF THE PURCHASED ASSETS AND THE ASSUMED LIABILITIES. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN ARTICLE 5 OF THIS AGREEMENT, SELLER IS NOT MAKING ANY WARRANTY OF MERCHANTABILITY, SUITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR QUALITY, WITH RESPECT TO ANY OF THE TANGIBLE ASSETS BEING TRANSFERRED, OR AS TO THE CONDITION OR WORKMANSHIP THEREOF OR THE ABSENCE OF ANY DEFECTS THEREIN, WHETHER LATENT OR PATENT.**

**ARTICLE 7**
**ADDITIONAL COVENANTS**

Except as otherwise set forth in this <u>Article 7</u>, Seller and Buyer covenant and agree with each other that from the date hereof through the Closing:

**7.1** **General**. Each of the parties shall, upon the terms and subject to the conditions contained herein, pursue diligently and in good faith and use all reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or advisable under applicable laws and regulations to put, consummate and make effective the transactions contemplated hereby.

**7.2** **Confidentiality**.

(a) Each party hereto acknowledges that the other party has legitimate and continuing proprietary interests in the protection of its Confidential Information (as defined herein)

8

and that the parties have invested substantial sums and will continue to invest substantial sums to develop, maintain and protect such Confidential Information. Prior to and after the Closing, each party hereto agrees not to disclose, furnish or make accessible to anyone or use for its own benefit (other than as contemplated hereby) any trade secrets or other confidential or proprietary information (the "Confidential Information") of another party hereto relating to the Seller, including but not limited to any Confidential Information of its respective owners, guarantors, and employees, the Buyer and/or their respective businesses or the other parties, including information obtained by or revealed to such party during any investigations, negotiations or review relating to this Agreement and any other document contemplated hereby or thereby or any past or future actions taken in connection with, pursuant to, in accordance with, or under this Agreement, including any business plans, marketing plans, and financial information. Confidential Information shall include all analyses, notes, interpretations, memoranda or other documents evaluating the transactions contemplated by this Agreement (collectively, "Protected Materials") that have been or will be prepared by the Seller and its Representatives in connection with the transactions contemplated by this Agreement. Buyer and Seller acknowledge that in the event that the Buyer purchases the Purchased Assets pursuant to this Agreement, Buyer shall be permitted to use the Confidential Information strictly and directly contained within the Purchased Assets acquired by Buyer as the Buyer deems appropriate in its sole discretion, subject to: (i) Seller's and other Persons' Post-Closing Rights of Access to Confidential Information (as defined in Section 10.4); and (ii) those duties and restrictions related to the use and disclosure of Confidential Information under applicable law.

(b)     The Confidential Information shall be kept strictly confidential by the parties and shall not be disclosed to any Person except as in the opinion of outside counsel is required by applicable law and only after compliance with the procedures contained in this Article, except that the Buyer, on the one hand, and the Seller, on the other hand, may disclose Confidential Information to the Buyer and its Representatives, in the case of disclosures by the Buyer, and to the Representatives of the Seller, in the case of disclosures by the Seller; *provided, however*, that, except as provided in subsection (d), any Person to whom Confidential Information is so disclosed shall (i) have a need to know such information for purposes of consummating the transactions contemplated by this Agreement and (ii) first agree to be bound by the provisions of this Article. Buyer shall provide Seller with written evidence of such Representatives written agreement to be bound by the provisions of this Section 7.3 upon request thereof by Seller. If any party becomes legally compelled (including by deposition, interrogatory, request for documents, subpoena, civil investigative demand or similar process) to disclose any of the Confidential Information, the party subject to such legal process shall provide the other parties with prompt prior written notice of such requirement so that the other parties may seek a protective Order or other appropriate remedy. If such protective Order or other remedy is not obtained, the party subject to the legal process agrees to disclose only that portion of the Confidential Information that they are advised by outside counsel is legally required to be disclosed and to take all reasonable steps to preserve the confidentiality of the Confidential Information.

(c)     The Seller shall be responsible for any breach of this Section 7.3 by its Representatives, and the Buyer shall be responsible for any breach of this Section 7.3 by its Representatives.

9

(d)     Notwithstanding any provision of this Agreement to the contrary, it is acknowledged and agreed by the parties that (i) this Agreement and any ancillary documents may be filed by the Seller with the Bankruptcy Court and none of the restrictions contained in this Section 7.3 will be applicable to any documents so filed, and (ii) such of the Protected Materials as counsel for the Seller determines are required to be presented to the Bankruptcy Court at any hearing before the Bankruptcy Court may be disclosed at such hearing without violating this Article.

(e)     Except as required by applicable law or otherwise provided herein, the schedules annexed hereto shall not be disclosed to the public without the prior written consent of each of the parties hereto.

(f)     If this Agreement is terminated for any reason prior to Closing, the parties and their Representatives will promptly return to the other parties or destroy all Confidential Information obtained from the other parties (or their Representatives, as applicable) and all copies, extracts or other reproductions thereof in whole or in part. Notwithstanding the return or destruction of the Confidential Information, the parties will continue to be bound by the provisions of this Article.

(g)     Notwithstanding anything in this Agreement to the contrary, the parties hereto expressly agree that the Seller's obligations under this Article regarding Confidential Information shall mean and include only the Confidential Information of the Buyer, and the Buyer's obligations under this Article regarding Confidential Information shall mean and include only the Confidential Information of the Seller, including but not limited to any Confidential Information of their respective owners, guarantors, and employees.

**7.3     Notification of Certain Matters**. Each party will give prompt written notice to the other party of any material adverse development causing a breach of any of its own representations and warranties in Article 5 and Article 6 above. No disclosure by any party pursuant to this Section 7.3, however, shall be deemed to prevent or cure any misrepresentation, breach of warranty or breach of covenant.

## ARTICLE 8
## CONDITIONS TO OBLIGATION TO CLOSE

**8.1     Conditions to Obligation of Buyer**. The obligation of Buyer to consummate the transactions to be performed by it in connection with the Closing is subject to satisfaction of the following conditions:

(a)     The Court shall have issued the Sale Approval Order; and

(b)     The Sale Approval Order shall be a Final Order.

**8.2     Conditions to Obligation of Seller**. The obligation of Seller to consummate the transactions to be performed by it in connection with the Closing is subject to satisfaction of the following conditions:

(a)     The Court shall have issued the Sale Approval Order;

10

(b)      The Sale Approval Order shall be a Final Order;

(c)      Buyer shall have delivered a copy of the resolutions of its board of directors or such other applicable governing body authorizing the execution and delivery of this Agreement and the consummation of the transactions set forth herein. Such resolutions shall be certified by an authorized officer of Buyer and as being true and correct and in full force and effect as of the Closing Date;

(d)      The representations and warranties set forth in Article 6 above shall be true and correct in all material respects at and as of the Closing Date;

(e)      Buyer shall have performed and complied with all of its covenants hereunder in all material respects through the Closing Date;

(f)      All actions to be taken by Buyer in connection with consummation of the transactions contemplated hereby and all certificates, instruments and other documents required to effect the transactions contemplated hereby will be reasonably satisfactory in form and substance to Seller; and

(g)      No action, suit or proceeding shall be pending or threatened before any court or quasi-judicial or administrative agency of any federal, state, local or foreign jurisdiction or before any arbitrator wherein an unfavorable injunction, judgment, order, decree, ruling or charge would (i) prevent consummation of any of the transactions contemplated by this Agreement, (ii) cause any of the transactions contemplated by this Agreement to be rescinded following consummation, or (iii) affect adversely the right of Buyer to own the Purchased Assets.

**8.3    Waiver**. Buyer may waive any condition specified in Section 8.1 and Seller may waive any condition specified in Section 8.2 in a writing so stating at or prior to the Closing.

## ARTICLE 9
## RISK OF LOSS

Seller acknowledges and agrees that Buyer does not have any Liability or obligation to Seller in respect of any loss, theft or damage to property experienced by Seller at any time, whether occurring prior to, on or after the date hereof.  If Closing occurs, Buyer shall be entitled to the proceeds of any insurance or other proceeds payable with respect to the losses on the Purchased Assets for loss or damage occurring prior to the Closing Date, whether received prior to, at or after Closing. At Closing, all risk of loss, theft or damage with respect to the Purchased Assets, and all Liability therefore, shall pass to Buyer.

## ARTICLE 10
## POST-CLOSING COVENANTS

**10.1    General**. In case at any time after the Closing any further action is necessary or desirable to carry out the purposes of this Agreement, each of the parties will take such further action (including the execution and delivery of such further instruments and documents) as any other party reasonably may request, all at the sole cost and expense of the requesting party.

**10.2    Confidentiality**. The parties hereto acknowledge and agree that the confidentiality obligations set forth in Section 7.2 shall remain in full force and effect following the Closing or the earlier termination of this Agreement prior thereto.

**10.3    Litigation Support**. In the event and for so long as any party actively is contesting or defending against any action, suit, proceeding, hearing, investigation, charge, complaint, claim or demand in connection with (i) any transaction contemplated under this Agreement or (ii) any fact, situation, circumstance, status, condition, activity, practice, plan, occurrence, event, incident, action, failure to act or transaction on or prior to the Closing Date involving Seller, the other party will cooperate with the contesting or defending party and such party's counsel in the contest or defense, make available its Personnel, and provide such testimony and access to its books and records as shall be necessary in connection with the contest or defense, all at the sole cost and expense of the contesting or defending party.

**10.4    Further Assurances**. Following the Closing, each of the parties hereto shall execute and deliver, at the reasonable request of another party, such additional documents, instruments and assurances and take such further actions as such other party may reasonably request to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement. Buyer will execute such further instruments as, in the reasonable opinion of counsel for Seller or its respective owners, may be necessary or convenient to protect Seller's and its respective owner's rights and interests consistent with the terms and conditions of this Agreement, including the scope of those items which are retained as Excluded Assets and not included within the scope of the Purchased Assets.  Buyer agrees to cooperate with Seller and its owners and agents as may be reasonably requested or required with regard to Seller's billing and collection of accounts receivable, and as may otherwise be required or requested of Seller or any of its owners as a result of the consummation of the transactions set forth herein, including any reports  or any governmental or non-governmental third party as a result of the transaction (collectively, "Post-Closing Rights of Access to Confidential Information").

## ARTICLE 11
## TERMINATION

**11.1    Termination of Agreement**. This Agreement may be terminated prior to the Closing:

(a)    By mutual written consent executed by both Buyer and Seller (subject to the approval of the Court) at any time;

(b)    Seller may terminate this Agreement by giving written notice to Buyer at any time prior to the Closing if any event occurs which renders satisfaction of one or more of the conditions to Seller's obligations set forth in Section 8.2 impossible.

**11.2    In the Event of Termination; Remedies**. If any party terminates this Agreement pursuant to this Article 11, all rights and obligations of the parties hereunder shall terminate without any Liability of any party to any other Party (except for any Liability of any party then in breach); provided, however, that such termination shall not affect Seller's obligations pursuant to 12.10 hereof.

# ARTICLE 12
## MISCELLANEOUS

**12.1    Assignment; Successors**. Neither this Agreement nor any of the rights or obligations hereunder may be assigned by any party without the prior written consent of all other parties to this Agreement. Subject to the approval of the Court, Seller consents to the assignment by Buyer of its rights pursuant to this Agreement, to any Affiliate of Buyer. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective representatives, heirs, legatees, successors and permitted assigns, and no other Person shall have any right, benefit or obligation hereunder.

**12.2    Notices**. Any notice required to be given under this Agreement shall be given in writing and may be served either by personal delivery, facsimile, Federal Express or similar overnight delivery or by depositing the same in first class mail, postage prepaid, certified mail, addressed to the respective parties as indicated below, or such different address as a party may have fixed by notice hereunder:

If to Seller, addressed to:

Fred DeFalco, Managing Member
Club Village, LLC
1601 NW 13th Street
Boca Raton, Florida 33486
Tel.: 561-702-3757

Fax: 888-300-2136
Email: fred@defalco.com

    with a copy to:

    Furr Cohen, P.A.
    2255 Glades Rd, Ste 337W
    Boca Raton, FL 33431
    Attn: Aaron A. Wernick, Esq.
    (561) 395-0500 (main)
    (561) 417-1569 (direct)
    Email: awernick@furrcohen.com


If to Buyer, addressed to:

_____
_____
_____
_____
Tel.: _____
Fax: _____
Email: _____

with a copy to:

_____
_____
_____
_____
Tel.: _____
Fax: _____
Email: _____

or to such other place and with such other copies as any party may designate as to itself by written notice to the others.

Notices delivered personally shall be effective upon delivery. Notices transmitted by facsimile or overnight delivery shall be effective when received provided they are received during normal business hours of the recipient on a Business Day, and if not, the next Business Day. Notices delivered by mail shall be effective seventy-two (72) hours after mailing.

**12.3    Choice of Law**. This Agreement shall be construed and interpreted, and the rights of the parties determined in accordance with, the laws of the State of Florida. The parties hereto irrevocably submit to the exclusive jurisdiction of the Court (or any court exercising appellate jurisdiction over the Court) over any dispute arising out of or relating to this Agreement or any other agreement or instrument contemplated hereby or entered into in connection herewith or any of the transactions contemplated hereby or thereby. Each party hereby irrevocably agrees that all claims in respect of such dispute or proceedings may be heard and determined in such dispute or proceedings may be heard and determined in such courts. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum in connection therewith.

**12.4    Entire Agreement; Amendments and Waivers**. This Agreement, together with all exhibits and schedules attached or to be attached hereto constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

**12.5    Third Party Beneficiaries**. No Person other than the parties hereto, shall have any rights or claims under this Agreement.

**12.6    No Waiver**. The failure of either party hereto to seek redress for any breach, or to insist upon the strict performance, of any covenant or condition of the Agreement by the other shall not be, or be deemed to be, a waiver of the breach or failure to perform, nor prevent a

subsequent act or omission in violation of, or not strictly complying with, the terms hereof from constituting a default hereunder.

**12.7    Multiple Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**12.8    Invalidity**. In the event that any one or more of the provisions, or any portion thereof contained in this Agreement or in any other instrument referred to herein, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, then to the maximum extent permitted by law, such invalidity, illegality or unenforceability shall not affect any other provision, or any portion thereof, of this Agreement or any other such instrument.

**12.9    Cumulative Remedies**. All rights and remedies of either party hereto are cumulative of each other and of every other right or remedy such party may otherwise have at law or in equity, and the exercise of one or more rights or remedies shall not prejudice or impair the concurrent or subsequent exercise of other rights or remedies.

**12.10   Termination of Covenants, Representations, and Warranties**. The covenants, representations, and warranties made by Seller herein shall terminate as of the Closing Date.  Buyer shall have no right to seek indemnification subsequent to the Closing based on a breach of a representation and/or warranty made by Seller herein or in any other document, certificate or instrument entered into by the Seller in connection herewith unless such covenants, representations, and warranties were breached due to actual fraud of the Seller.

**12.11   Representation by Counsel; Mutual Negotiation**. Each party has been represented by counsel of its choice in negotiating this Agreement. This Agreement shall therefore be deemed to have been negotiated and prepared at the joint request, direction and construction of the parties, at arm's length, with the advice and participation of counsel, and will be interpreted in accordance with its terms without favor to any party.

*[Signature Page Follows]*

  **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers, and have caused their respective corporate seals to be hereunto affixed, all as of the day and year first above written.

        **BUYER:**

        **[ENTITY NAME]**

        By: _____

        Name: _____

        Title: _____

**SELLER:**

CLUB VILLAGE, LLC

By: _____

Name: _____

Title: _____

## SCHEDULE 2.1

### PURCHASED ASSETS

1. Real property located at 1601 NW 13th St., Boca Raton, Florida, 33486. [Legal description attached in following pages.]
2. Cash in the Seller's operating account as of the Closing Date.
3. Accounts receivable as of the Closing Date.
4. Security deposits of tenants.
5. Security deposit at Florida Power & Light. Approximate amount of $1,850.00.
6. Security deposit at City of Boca Raton. Approximate amount of $6,300.00.
7. Tenants list and rent roll.
8. Office furniture, fixtures, and equipment:
   a. Security camera system with monitor, and 6 cameras.
   b. Pool furniture: 16 chairs, 4 tables, 6 resin chaises.
   c. Lawn equipment in trailer: lawn mower, weed-eater, edger, chainsaw, pole saw, office golf cart, maintenance golf cart, 5,250 watt electric generator, 15,000 watt electric generator.
   d. 2 desks, 2 file cabinets, 3 office chairs, 2 bookshelves.
   e. 3 desk-top computers with 4 monitors.
   f. AT&T phone system with answering machine and 2 handsets.
9. Misc. Supplies [List attached in following pages.]

LOTS 5, 6, 7, 8, 9, 10, 11, 12, 13 AND 14, BLOCK 27, "COUNTRY CLUB VILLAGE, SECTION E," ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 28, PAGE 204; EXCEPTING THEREFROM THAT PORTION: OF SAID LOTS DESCRIBED IN ORDER OF TAKING RECORDED IN OFFICIAL RECORDS BOOK 1845, PAGE 210, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA;

TOGETHER WITH:

A PORTION OF COUNTRY CLUB VILLAGE SECTION E, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 28, PAGE 204, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, DESCRIBED AS FOLLOWS:

BEGINNING AT A SOUTHEAST CORNER OF LOT 5, BLOCK 27 OF SAID PLAT; THENCE NO1° 25'25"W, ALONG THE EASTERLY LINE OF LOT 5, A DISTANCE OF 113.14 FEET TO. A POINT OF INTERSECTION WITH A NON-TANGENT CURVE, (A RADIAL LINE TO SAID POINT BEARS S37°15'3l'W); THENCE NORTHERLY AND SOUTHERLY ALONG THE ARC OF SAID CURVE BEING CONCAVE TO THE SOUTH HAVING A RADIUS OF 40.00 FEET, A CENTRAL ANGLE OF 282°38'08", AND AN ARC DISTANCE OF 197.32 FEET; THENCE SO1° 25'25"E, ALONG THE WESTERLY LINE OF LOT 8, A DISTANCE OF 89.99 FEET TO THE POINT OF CURVATURE OF A TANGENT CURVE; THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE BEING CONCA VE TO THE NORTHEAST, HAVING A RADIUS OF 25.00 FEET, A CENTRAL ANGLE OF 88°34'35", AND AN ARC DISTANCE OF 38.65 FEET; THENCE N90°00'00''W, 74.40 FEET TO THE POINT OF BEGINNING,

TOGETHER WITH:

A PORTION OF COUNTRY CLUB VILLAGE SECTION E, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 28, PAGE 204, OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA, DESCRIBED AS FOLLOWS:

COMMENCE AT THE SOUTHWEST CORNER OF LOT 9, BLOCK 27 OF SAID PLAT; THENCE S90°00'00"E, ALONG THE SOUTHERLY LINE OF LOT 9, A DISTANCE OF 142.42 FEET TO THE POINT OF BEGINNING, ALSO BEING THE POINT OF INTERSECTION OF A TANGENT CURVE; THENCE NORTHEASTERLY ALONG THE ARC OF SAID CURVE BEING CONCAVE TO THE NORTHWEST, HAVING A RADIUS OF 25.00 FEET, A CENTRAL ANGLE OF 90°00'00", AND AN ARC DISTANCE OF 39,27 FEET; THENCE N00°00'00"E ALONG THE EAST LINE OF LOT 9, 88.72 FEET TO THE POINT OF INTERSECTION WITH A NON-TANGENT CURVE, (A RADIAL LINE TO SAID POINT BEARS S38°40'56"W); THENCE NORTHERLY AND SOUTHERLY ALONG THE ARC OF SAID CURVE BEING CONCAVE TO THE SOUTH, HAVING A RADIUS OF 40.00 FEET, A CENTRAL ANGLE OF 282°38'08", AND AN ARC DISTANCE OF 197.32 FEET; THENCE S00°00'00'W. ALONG THE WEST LINE OF LOT 12, A DISTANCE OF 88.72 FEET TO THE POINT OF CURVATURE OF A TANGENT CURVE; THENCE SOUTHEASTERLY ALONG THE ARC OF SAID CURVE BEING CONCAVE TO THE NORTHEAST, HAVING A RADIUS OF 25.00 FEET, A CENTRAL ANGLE OF 90°00'00", AND AN ARC DISTANCE OF 39,27 FEET; THENCE S90°00'00"W, 100.00 FEET TO THE POINT OF BEGINNING.

**Property Address: 1551~1701 NW 13th  Street, Boca Raton, FL 33486**

**Inventory of Supplies**

| | |
|---|---|
| 4 | Red Cones |
| 2 | Wet Vac |
| 1 | Air Compressor |
| 1 | Microwave Range |
| 3 | Exits Lights |
| 10 | Gal Matte Paint |
| 7 | Vacuum |
| 1 | Paint Sprayer Machine |
| 1 | Skill Saw |
| 1 | Bathroom Sink Cabinet |
| 2 | Folding Wood Closet Doors |
| 1 | Steel Ladder |
| 1 | Closet White Ladder |
| 1 | Wheel Barrel |
| 1 | Weedeater |
| 1 | Dolly |
| 11 | Closet White Doors |
| 2 | Dishwasher |
| 4 | 5 gal Gas Containers |
| 1 | Room Doors |
| 3 | AC Door |
| 1 | Key maker |
| 1 | Double sink Kitchen counter (old) |
| 5 | Security Lights |
| 1 | Green Hose |
| 2 | Steel Ladder |
| 2 | Bathroom Sinks |
| 1 | 5250 Watt Electric Generator |
| 1 | 15000 Electric Generator |
| 1 | Mower Blade |
| 1 | Tile Cutter |
| 1 | Weed Eater |
| 1 | Gas Chain Saw |
| 1 | Small Air Delivery 2HP Compressor |
| 1 | Orange Extension Cord |
| 1 | Box 10 Bulb Pack 34 Watts |
| 1 | Electric Makita 48 Inch |
| 1 | Box Tile 6x8 |
| 2 | Hand Saw |
| 1 | Bathroom Ceiling Fans |
| 5 | Complete Plastic Bathdrain |
| 5 | Toilet Tank covers |
| 2 | Range Cords |
| 1 | 3Pc Rain suit |
| 5 | Brass Cut Tank Water Heater Connectors |
| 7 | Toilet  Seat Covers |
| 14 | Blinds |
| 1 | 10/2 Electric Wire |
| 1 | Pressure  Cleaner |
| 2 | AC Closet Doors |

| | |
|---|---|
| 1 | Kitchen Faucet |
| 1 | 5Gal Mold Resistant Coating |
| 4 | Shower Kit |
| 1 | Box of Dryer Vent Hood & Ballard |
| 3 | Chain Saw Chains |
| 2 | Universal Water Heater Repair Parts |
| 2 | Stainless Steel Eye to Eye Turn Buckle |
| 1 | Royal Drill Hammer |
| 1 | Regular Drill |
| 1 | Chain Saw |
| 1 | Snake Machine |
| 1 | Ceiling Round Dining Room Lights |
| 1 | Box of AC filters 16X20 |
| 1 | Box of AC filters 16X20 |
| 1 | Range Hood |
| 5 | Busters |
| 7 | Bed and Bath Door Locks |
| 4 | Boxes 12X12 Tiles |
| 5 | Gallons of Semi Gloss Paint |

## **SCHEDULE 2.2**

## EXCLUDED ASSETS

1.      Potential counter-claims against CW Capital, CF SBC Pledgor 1 2012-1 Trust, Fortress, and/or JPMorgan Chase.

2.      Appeal of Club Village LLC: Club Village, LLC vs. CF SBC Pledgor Trust, 4th District Court of Appeal, Case #4D16-2463

3.      Any pending or otherwise causes of action owned by Club Village: CF SBC Pledgor vs. Club Village, LLC, Case #502012CA012536XXXXMB

## <u>SCHEDULE 2.3</u>

<u>LITIGATION</u>

1. Club Village, LLC vs. CF SBC Pledgor, 4th District Court of Appeal, Case #4D16-2463

2. CF SBC Pledgor vs. Club Village, LLC, Case #502012CA012536XXXXMB

<u>Exhibit E</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

In Re:                                                      Case No. 16-21497-PGH
                                                            Chapter 11
CLUB VILLAGE, LLC,

                  Debtor.
_____/

**<u>NOTICE OF AUCTION SALE AND BIDDING PROCEDURES</u>**

**TO ALL PARTIES IN INTEREST AND PROSPECTIVE BIDDERS:**

        **PLEASE TAKE NOTICE that:**

        1.    The United States Bankruptcy Court for the Southern District of Florida, Jacksonville Division (the "<u>Bankruptcy Court</u>"), entered an Order pursuant to 11 U.S.C. § 105, 363, and 1146, Federal Rules of Bankruptcy Procedure 2002 (a)(2), 2002 (c)(1), and 6004, and Local Rules 2002-1(C)(2), and 6004-1, (a) authorizing and scheduling the sale of the Assets, which are listed and described as follows:

        A.  The real property, which is an 84-unit apartment complex located at 1601 NW 13th St., Boca Raton, Florida, 33486 (the "<u>Property</u>"); and

        B.  All personal property of the Debtor ("<u>Personal Property</u>") (list attached as Exhibit "A"), except those assets listed in Exhibit "B" ("<u>Excluded Assets</u>");

        (collectively, the "<u>Assets</u>").

free and clear of liens, claims and encumbrances; (b) approving the Bidding Procedures[1]; (c) approving the Notice of Sale; (d) scheduling an Auction to accept higher and better bids; (e) scheduling a hearing to approve the Sale arising out of the auction; and (f) approving payment of closing costs, broker's commission, and marketing costs (the "<u>Sale Procedures Order</u>")[2].

---

[1] All capitalized terms not expressly defined herein have the meaning ascribed to such term in the Bid Procedures Order.

[2] A copy of the Bid Procedures Order may be obtained: (a) in person, during regular business hours, from the Office of the Clerk of the Bankruptcy Court, Flagler Waterview Building, 1515 N. Flagler Dr., West Palm Beach, FL; (b)

2.      Pursuant to the Sale Procedures Order[3], the Debtor has received authorization from the Bankruptcy Court to employ the procedures set forth herein for consideration of competitive bids for purchase of the Property including: (a) the establishment of deadlines and certain criteria for submitting Qualified Bids; (b) the approval of bidding procedures and overbid requirements; and (c) the scheduling of the Auction.

3.      The Debtor shall provide by e-mail and/or U.S. Mail written notice of the Auction, the Bidding Procedures and the Sale Hearing within three business days from the entry of the Sale Procedures Order to: (a) those persons who contacted the Debtor or any of its representatives regarding the sale of the Assets; (b) those persons who the Debtor has reason to believe may possess an interest in purchasing the Property; (c) the U.S. Trustee; (d) counsel to CF-SBC Pledgor Trust; (e) the Internal Revenue Service; (f) all other parties who have filed a notice of appearance; and (g) all other creditors.

<u>ELIGIBILITY TO MAKE BIDS</u>

4.      Any person or entity that wishes to participate in a competitive bidding process for the purchase of the Property (the "<u>Auction</u>") must satisfy the requirements set forth below to become a Qualified Bidder. Neither the Debtor nor the Court shall consider bids that are not proposed by a Qualified Bidder.

<u>BIDDING PROCESS</u>

5.      A person may be qualified to participate in the auction if, by the <u>bid deadline of</u> <u>**5:00 p.m. on November 28, 2016**</u> (the "<u>Bid Deadline</u>"), the following are provided:

(a) A deposit of Five Hundred Thousand Dollars and 00/100 ($500,000.00) (the "<u>Deposit</u>") payable by bank cashier's check or wire transfer into the non-interest bearing escrow account of Furr Cohen, P.A., along with the Social Security Number or EIN of the bidding person or entity;

(b) An executed purchase contract, substantially in the form of the Asset Purchase Agreement attached to the Sale Motion, which has no contingencies to the validity, effectiveness or binding nature of the offer, including, without limitation, contingencies for financing, due diligence or inspection; and

---

downloaded from the Bankruptcy Court's electronic docket (CM/ECF); or (c) by written request to undersigned counsel.
[3] In the event of any discrepancy between the terms of this Notice and the terms of the Bid Procedures Order, the Bid Procedures Order shall govern and control.

(c) Evidence, sufficient to Debtor, that the bidder either has sufficient cash to close the transaction at its bid price or, alternatively, a firm and unequivocal agreement from a recognized financial institution that it will unconditionally fund any portion of the purchase price that the buyer proposes to finance.

(the "Qualifying Bid Packet"). The Qualifying Bid Packet must be delivered no later than 5:00 p.m. on the November 28, 2016 to Aaron A. Wernick, Esq., of Furr Cohen, P.A., 2255 Glades Road, Suite 337W, Boca Raton, FL 33431, Telephone (561)395-0500, e-mail: awernick@furrcohen.com. The bidder's Qualifying Bid Packet must include the bidder's address, telephone and email address where the bidder may be contacted. Acceptable methods of delivery of the Qualifying Bid Packet are first class U.S. Mail, overnight mail, email, and hand delivery.

6. Upon satisfaction of all of the requirements set forth above, the Debtor shall evaluate each Qualifying Bid Packet submitted in accordance with the foregoing paragraph and may then identify a person, persons, entity or entities from among those who submitted a Qualifying Bid Packet and deem those person(s) "Qualified Bidders". By participating in the Auction, each Qualified Bidder consents to its bid being designated as a back-up bid.

7. Between the Bid Deadline and the Auction and during the Auction, the Debtor may, in its discretion, discuss, negotiate or seek clarification of any Qualified Bid.

8. The Debtor shall file and serve upon all interested parties entitled to receive notice, including the holders of qualified bids (the "Qualified Bids"), fully executed copies of the Qualified Bids to be considered at the Auction no later than 5:00 p.m. two days prior to the Auction Sale (the "Qualified Bid Summary"). This requirement is waived in the event there are no Qualified Bids.

<u>THE AUCTION SALE DATE</u>

9. In the event there are one or more Qualified Bidders on or before the Bid Deadline, then the Court shall conduct the Auction on **December 1, 2016 at 9:30 a.m.** at the Southern District of Florida Bankruptcy Court, Flagler Waterview Building, Courtroom A, 1515 N. Flagler Dr., West Palm Beach, FL. The highest bid shall be accepted subject to Court approval, which will be sought from this Court at the Sale Hearing (described below), at which time the Court will approve the bid and hear any objections to the sale process.

10. The Auction shall be a forum in which the Qualified Bidders may make competing bids to purchase the Property in minimum bid increments of $50,000.00, until the Debtor receives

what is determined to be the highest and best offer to purchase the Property. The Debtor will also identify an acceptable backup Bidder (the "Backup Bidder"). Qualified Bidders may appear at the Auction or submit competing bids telephonically.

11.     Sale Free and Clear of Liens, Claims and Conditions: The Assets will be sold free and clear of all liens, claims and encumbrances, with liens to attach to the proceeds of sale.

12.     Objections: Objections, if any, to the Sale, must (a) be in writing; (b) set forth the nature of the objector's claims against or interest in the Debtor's estate, and the basis for the objection and the specific grounds therefore; (c) comply with the Bankruptcy Rules and Local Bankruptcy Rules for the Southern District of Florida and all Orders of this Court; and (d) be electronically filed with the Court in this case no later than 5:00 p.m. one day prior to the Hearing to approve the sale (the "Sale Hearing"). Only timely filed and served responses, objections, or other pleadings will be considered by this Court at the Sale Hearing. The failure of any person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, or any objections to the Motion, the Sale or consummation and performance of the Agreement.

13.     The Court shall conduct the Sale Hearing on **December 1, 2016, immediately following the conclusion of the Auction,** at the Southern District of Florida Bankruptcy Court, Flagler Waterview Building, Courtroom A, 1515 N. Flagler Dr., West Palm Beach, FL. Except as otherwise stated herein, each Deposit shall be maintained in a non-interest bearing account and is subject to the jurisdiction of the Court. Within five business days from the entry of an Order approving the Sale, the Debtor shall return, by check, all Deposits to all Qualified Bidders except the Successful Bidder or the person who submitted the Back-Up Bid (the "Back Up Bidder"). In the event the Successful Bidder closes the Sale, the Debtor shall return the Back Up Bidder's Deposit, by check, within five business days from the closing. In the event the Successful Bidder closed on the purchase of the Property, its Deposit shall be applied by the Debtor against the purchase price.

14.     All Qualified Bidders shall be deemed to have consented to the core jurisdiction of this Court and to have waived any right to a jury trial in connection with any disputes relating to the Auction or the Sale. All purchase agreements shall be governed by and construed in accordance with the laws of the State of Florida. All Qualified Bidders shall be bound by their bids until conclusion of the Auction. If the Successful Bidder is unable or unwilling to close the Sale, the Successful Bidder shall forfeit its Deposit (or such portion as is designated in the Successful

Bidder's purchase agreement) to the Debtor and the Debtor shall close the Sale with the Back-Up Bidder, without further notice or hearing, who shall then be obligated to close the Sale on the terms of the Back-Up Bid and the corresponding Bidder's purchase agreement. If the Back-Up Bidder, if any, is unable or unwilling to close the Sale, the Back-Up Bidder shall forfeit its Deposit (or such portion as is designated in the Successful Bidder's purchase agreement) to the Debtor.

PLEASE TAKE FURTHER NOTICE THAT any inquiries regarding the foregoing should be directed to Debtor's counsel listed below.

Dated: September 16, 2016.

Furr and Cohen, P.A.
*Attorneys for the Debtor*
2255 Glades Road, Suite 337W
Boca Raton, Florida 33486
(561)395-0500
E-mail: awernickfurrcohen.com
 /s/ *Aaron A. Wernick*
Aaron A. Wernick, Esq.
Florida Bar No. 14059